Filed 7/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROBERT ERNEST COWART,<br><br>        Defendant and Appellant. | A141043<br><br>(Sonoma County<br>Super. Ct. No. SCR620101) |

Penal Code section 1601, subdivision (a) addresses the availability of outpatient medical treatment for a defendant "charged with and found incompetent on a charge of . . . any felony involving death." We decide on this appeal whether a defendant who allegedly left the scene of a car accident in violation of Vehicle Code section 20001, subdivision (a) was charged with a "felony involving death" when there are no allegations or evidence that the victim's death resulted from the defendant's flight from the accident scene.

We conclude that the defendant was not charged with a felony involving death. Vehicle Code section 20001 does not criminalize motor vehicle accidents or the injuries resulting from them. "It merely addresses the duties of a driver, however otherwise innocent, once the accident and its attendant injuries have occurred." (*People v. Wood* (2000) 83 Cal.App.4th 862, 866 (*Wood*).) We therefore reverse the trial court's order requiring that defendant be confined pursuant to Penal Code section 1601, subdivision (a) before receiving outpatient treatment.

**BACKGROUND**

Defendant Robert Ernest Cowart was charged with a single felony count of failing to stop at the scene and report an injury accident in violation of Vehicle Code section

20001, subdivision (a). The complaint was later amended to add a count of misdemeanor vehicular manslaughter in violation of Penal Code section 192, subdivision (c)(2).

Upon a stipulation of the parties, the trial court found defendant incompetent to stand trial. According to a neuropsychological evaluation requested by the district attorney, defendant was suffering from vascular dementia and was not expected to gain competency in the future "unless major strides are made in terms of dementia treatment." Defendant was 68 years of age at the time of the alleged injury accident.

We do not have a clear record on appeal of the incident underlying the charges against defendant, perhaps because defendant was found incompetent before any evidence was developed. For background purposes only, we recite the district attorney's description of events, which has not been admitted to by defendant: "On June 8, 2012, defendant was driving his vehicle southbound on Petaluma Hill road at approximately 45 miles per hour. Stephan Alan Norwick was riding his bicycle southbound on the paved asphalt shoulder of Petaluma Hill road ahead of defendant. Defendant was inattentive to his driving and allowed his vehicle to turn onto the west paved asphalt shoulder. As a result of defendant's unsafe turning movement, the right front of defendant vehicle collided with the back tire of Norwick's bicycle. Norwick's head hit the passenger side mirror and he was thrown onto the dirt shoulder. On June 19, 2012, Norwick died of his injuries." Defendant allegedly left the scene of this accident without stopping to render assistance to the victim or provide identification information. There is no evidence before us that the victim's injuries were caused by the defendant leaving the scene of the accident.

The trial court held a hearing on December 19, 2013, to consider defendant's placement. The parties disputed whether Penal Code section 1601 required that defendant be confined to a medical facility before receiving outpatient medical treatment. Their dispute centered on whether the defendant was charged with a "felony involving death" under Penal Code section 1601, subdivision (a). At the conclusion of the hearing, the trial court ordered defendant confined to Napa State Hospital for a 90-day evaluation period and remanded him into the custody of the Sonoma County Jail.

On December 23, 2013, defendant brought a "Writ of Prohibition and/or Mandate" challenging the trial court's December 19 order. On December 24, 2013, in response to the writ, we granted a temporary stay of the trial court's order and ordered defendant's release from the Sonoma County Jail. The trial court held a hearing later that day and issued an order releasing defendant from custody on bail with conditions, including that he not drive any type of vehicle, that he take prescribed medication, and that he continue the in-house care the Veteran's Administration had been providing. The trial court also clarified the basis of its December 19 order, stating: "I do believe, based on the felony that's charged, the facts underlying the felony as this Court knows them, that 1601 of the Penal Code does apply, and that therefore, there is a 180-day minimum confinement. I believe it was a felony that resulted in death, at the direct hand of the defendant, and that that Penal Code Section contemplates a thorough, a thorough forensic attempt to restore the defendant in such felony cases."[1]

**DISCUSSION**

"If the defendant is found mentally incompetent, the trial . . . shall be suspended until the person becomes mentally competent." (Pen. Code, § 1370, subd. (a)(1)(B).) Under certain circumstances, Penal Code sections 1370 and 1600 permit outpatient placement for defendants found incompetent to stand trial. (Pen. Code, § 1370, subd. (a)(1)(B)(i); § 1600.) However, at the time of the trial court's December 19, 2013 order, Penal Code section 1601, subdivision (a) provided, in pertinent part: "In the case of any person charged with and found incompetent on a charge of . . . any felony involving death . . . , outpatient status under this title shall not be available until that person has

---

[1] After ordering the temporary stay, we informed defendant that the trial court's December 19, 2013, confinement order was appealable and that if he timely filed a notice of appeal, we would treat his writ of prohibition/mandate as a writ of supersedeas, grant the writ of supersedeas, and leave in place the temporary stay of the trial court's December 19 order. Defendant then timely filed a notice of appeal of the December 19 order. We treated his original writ as a writ of supersedeas and ordered that the temporary stay we previously imposed remain in place.

actually been confined in a state hospital or other treatment facility for 180 days or more . . . ."

This subdivision was amended, effective January 1, 2015, to add an additional clause which gives the trial court discretion to place a mentally incompetent defendant in an outpatient program, even if he has been charged with a "felony involving death."[2] (Pen. Code, § 1601, subd. (a); Stats. 2014, ch. 734, § 1.)  The statute now permits the court to place a defendant in outpatient treatment if "the court finds a suitable placement . . . that would provide the person with more appropriate mental health treatment and the court finds that the placement would not pose a danger to the health or safety of others, including, but not limited to, the safety of the victim and the victim's family."  We asked the parties for further briefing to address the applicability of this amendment.  Because we conclude that defendant was not charged with a "felony involving death," we do not need to reach the effect of the amendment to Penal Code section 1601, subdivision (a) to this matter.

---

[2] The current version of Penal Code section 1601, subdivision (a) states in full: "In the case of any person charged with and found incompetent on a charge of, convicted of, or found not guilty by reason of insanity of murder, mayhem, aggravated mayhem, a violation of Section 207, 209, or 209.5 in which the victim suffers intentionally inflicted great bodily injury, robbery or carjacking with a deadly or dangerous weapon or in which the victim suffers great bodily injury, a violation of subdivision (a) or (b) of Section 451, a violation of paragraph (2), (3), or (6) of subdivision (a) of Section 261, a violation of paragraph (1) or (4) of subdivision (a) of Section 262, a violation of Section 459 in the first degree, a violation of Section 220 in which the victim suffers great bodily injury, a violation of Section 288, a violation of Section 18715, 18725, 18740, 18745, 18750, or 18755, or any felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person, outpatient status under this title shall not be available until that person has actually been confined in a state hospital or other treatment facility for 180 days or more after having been committed under the provisions of law specified in Section 1600, *unless the court finds a suitable placement, including, but not limited to, an outpatient placement program, that would provide the person with more appropriate mental health treatment and the court finds that the placement would not pose a danger to the health or safety of others, including, but not limited to, the safety of the victim and the victim's family*."  (Italics added.)  We have italicized the language that became effective January 1, 2015.

4

The issue of whether defendant was charged with a "felony involving death" for his alleged violation of Vehicle Code section 20001, subdivision (a) is a question of law, which we address under an independent review standard. (*People v. Jones* (2001) 25 Cal.4th 98, 103.) Our first step is to "look to the words of the statute[s] themselves." (*MacIsaac v. Waste Management Collection and Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1082.) "We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction." (*Id.* at p. 1083.)

Vehicle Code section 20001, subdivision (a) states: "The driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." Vehicle Code sections 20003[3] and 20004[4] essentially require drivers to render reasonable aid to an injured

---

[3] "(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his or her name, current residence address, the names and current residence addresses of any occupant of the driver's vehicle injured in the accident, the registration number of the vehicle he or she is driving, and the name and current residence address of the owner to the person struck or the driver or occupants of any vehicle collided with, and shall give the information to any traffic or police officer at the scene of the accident. The driver also shall render to any person injured in the accident reasonable assistance, including transporting, or making arrangements for transporting, any injured person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if that transportation is requested by any injured person.

"(b) Any driver or injured occupant of a driver's vehicle subject to the provisions of subdivision (a) shall also, upon being requested, exhibit his or her driver's license, if available, or, in the case of an injured occupant, any other available identification, to the person struck or to the driver or occupants of any vehicle collided with, and to any traffic or police officer at the scene of the accident." (Veh. Code, § 20003.)

[4] "In the event of death of any person resulting from an accident, the driver of any vehicle involved after fulfilling the requirements of this division, and if there be no traffic or police officer at the scene of the accident to whom to give the information required by Section 20003, shall, without delay, report the accident to the nearest office of the

person and furnish identification information. "In lay terms, section 20001, subdivision (a) describes the crime of hit-and-run." (*People v. Braz* (1998) 65 Cal.App.4th 425, 427 (*Braz*).) The victim's death is not a necessary element of Vehicle Code section 20001, subdivision (a); the same section may also apply when the victim suffers an injury that does not result in death. (Veh. Code, § 20001, subd. (a).) The judicial council jury instructions reflect that death is not a necessary element of Vehicle Code section 20001, subdivision (a). (CALCRIM No. 2140 [accident caused death or injury to someone else].)

The parties have not cited, and we are not aware of, any published opinions addressing whether a violation of Vehicle Code section 20001, subdivision (a) is a felony involving death under Penal Code section 1601, subdivision (a). But we are not without guidance, as several appellate courts—in opinions which neither party has cited—have addressed analogous issues involving Vehicle Code section 20001. Those courts have concluded that Vehicle Code section 20001 does not criminalize a motor vehicle accident and its attendant injuries, but instead criminalizes leaving the scene of an accident that has already occurred.

In *Braz, supra*, 65 Cal.App.4th 425, the court analyzed whether the sentencing enhancement provision of Vehicle Code section 20001, subdivision (b)(2) was applicable to the hit-and-run conviction before it. At the time *Braz* was decided, subdivision (b)(2) allowed for increased punishment for "[a]ny violation of subdivision (a) which results in . . . permanent, serious injury." (*Id.* at pp. 427, 431.) The jury found the defendant guilty of violating subdivision (a), and also found the violation resulted in permanent, serious injury under subdivision (b)(2). (*Id.* at p. 431.) The defendant argued on appeal that the subdivision (b)(2) sentence enhancement could not apply "unless the defendant's failure to comply with subdivision (a) proximately causes permanent, serious injury." (*Ibid.*) The court agreed, stating: "Section 20001, subdivision (a) describes a standard of

Department of the California Highway Patrol or office of a duly authorized police authority and submit with the report the information required by Section 20003." (Veh. Code, § 20004.)

conduct for drivers who are involved in accidents causing injury to other persons, whether or not the drivers are responsible for the accident. [Citations.] 'The gravamen of a section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.' [Citations, italics omitted.] It thus follows that a court may not impose the penalties set forth in subdivision (b)(2) *unless the defendant's failure to stop and present identification and render aid causes permanent, serious injury* to the accident victim." (*Ibid*., italics added.)[5]

In *Wood, supra,* 83 Cal.App.4th 862, the court addressed whether a violation of Vehicle Code section 20001 was a " 'felony in which the defendant personally inflicts great bodily injury' " under Penal Code section 1192.7, subdivision (c)(8), when the "injury to the victims was the result of the driving and not of the flight." (*Id.* at p. 865.) If the violation was a felony in which the defendant inflicted great bodily injury, then it would be a " 'serious felony' " under Penal Code section 1192.7, subdivision (c)(8) and therefore a "strike" under the then-current three-strikes laws. (*Id.* at p. 864.) The court stated that "Vehicle Code section 20001 does not make criminal the actual accident or event which causes the physical contact with the victim. It merely addresses the duties of a driver, however otherwise innocent, once the accident and its attendant injuries have occurred." (*Id.* at p. 866.) The court concluded: "We hold, therefore that where the defendant causes serious bodily injury by the manner of the original impact with the victim while driving and thereafter fails to stop as required by Vehicle Code section 20001, such conduct does not qualify as a serious felony under Penal Code section 1192.7, subdivision (c)(8)." (*Id.* at p. 867.)

---

[5] In response to *Braz*, the Legislature amended subdivision (b)(2), effective October 10, 1999, to provide for increased punishment when "the *accident* described in subdivision (a) results in death or permanent, serious injury." (Veh. Code, § 20001, subd. (b)(2), italics added; Stats. 1999, ch. 854, § 1.) As we discuss *post*, courts have continued to hold after this amendment that the "gravamen" of Vehicle Code section 20001 is not the initial injury to a victim, but leaving the scene of an accident without presenting identification or rendering aid.

7

In *People v. Valdez* (2010) 189 Cal.App.4th 82 (*Valdez*), the court addressed whether, for purposes of a sentencing enhancement, injuries sustained by a car accident victim occurred "in the 'commission of' " a violation of Vehicle Code section 20001. (*Id.* at pp. 84-85.) The injuries suffered by the victim occurred after being struck by a car driven by the defendant, but were not aggravated in any manner by the defendant's flight. (*Id.* at p. 84.) A jury found the defendant guilty of violating Vehicle Code section 20001, subdivision (a). The jury also found true the special allegation that the defendant caused great bodily injury to the victim, resulting in a three-year enhanced sentence under Penal Code section 12022.7, subdivision (a), which applies to any person who personally inflicts great bodily injury "in the 'commission of a felony . . . .' " (*Id.* at p. 85; Pen. Code, § 12022.7, subd. (a).) The defendant appealed the special finding, arguing that the injuries suffered by the victim in the initial accident could not have occurred " 'in the commission' " of the Vehicle Code section 20001 violation unless they occurred during defendant's flight after the accident. (*Valdez, supra,* 189 Cal.App.4th at p. 87.) The court agreed with the defendant, stating: "*Braz* and *Wood* are consistent with an unbroken line of cases stretching back more than 50 years" that "lead to but one conclusion: the injuries sustained in the accident in this case were not inflicted *in the commission of* a felony or attempted felony based upon defendant's subsequent flight." (*Id.* at pp. 89-90.) "The injuries were 'caused by acts which occurred prior to the criminal act [i.e. violating Vehicle Code section 20001], not the result of the criminal act.' [Citation.]. The fact that defendant *subsequently* fled does not retroactively alter the character of the accident from noncriminal to criminal." (*Id.* at p. 90.)

Similarly, in *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1340 (*Corenbaum*), the court addressed whether, under Code of Civil Procedure section 1021.4, a civil action for damages was "based upon" a violation of Vehicle Code section 20001 when the plaintiff's injuries were caused during the initial car accident, rather than the defendant's flight from the accident. (*Id.* at pp. 1324-1325, 1339.) Pursuant to Code of Civil Procedure section 1021.4, a court may award attorney's fees to a prevailing plaintiff in a civil action that is "based upon that defendant's commission of a felony

8

offense for which that defendant has been convicted." (Code Civ. Proc., § 1021.4.) The court concluded the civil action was not "based upon" a violation of Vehicle Code section 20001 because the injury for which the plaintiff sought damages occurred during the initial accident, not the subsequent flight. The court stated that "[m]any courts have concluded that the conduct made criminal by Vehicle Code section 20001 . . . is fleeing the scene of an injury accident without providing the required information or rendering assistance, rather than causing or being involved in the accident itself." (*Id.* at p. 1340.) "Accordingly, the damages recoverable in a civil action for violation of the statute are limited to those caused by fleeing rather than damages caused by the accident itself. [Citation.] [¶] We therefore conclude that when a defendant has been convicted of a violation of Vehicle Code section 20001, subdivision (a), the conduct constituting the commission of a felony for purposes of [Code of Civil Procedure] section 1021.4 is fleeing the scene of an injury accident without providing the required information or rendering assistance." (*Id.* at pp. 1340-1341.)

In a case involving restitution ordered as part of a state prison sentence—a context unrelated to this matter—the court in *People v. Rubics* (2006) 136 Cal.App.4th 452 (*Rubics*) examined the elements of Vehicle Code section 20001 to determine whether funeral expenses for a car accident victim were incurred "as a result of" a Vehicle Code section 20001 violation. (*Id.* at p. 457, italics omitted.) The trial court ordered that the defendant pay for the funeral expenses after he pleaded guilty to a felony violation of Vehicle Code section 20001, subdivision (a), and to an allegation under subdivision (b)(2) that the accident resulted in death. (*Id.* at p. 454.) The defendant admitted in his plea that he was "involv[ed] in an accident resulting in the injury or death of another," but argued on appeal that the loss suffered by the victim's family was a result of the initial accident and not the defendant's flight from the scene. (*Ibid.*) The appellate court affirmed the restitution order, holding that the defendant's "involvement in an accident causing [the victim's] death is an element of his felony hit-and-run offense. Indeed, [the defendant] admitted these same facts in his guilty plea." (*Id.* at p. 458.) "Thus, the

elements of section 20001 require [the defendant's] involvement in the accident and responsibility for the loss incurred." (*Ibid.*)

*Rubics* is inapposite to this matter for several reasons. First, it addressed a victim's right to restitution after a defendant was convicted of violating Vehicle Code section 20001. (*Rubics, supra,* 136 Cal.App.4th at p. 461.) This context is different than confinement under Penal Code section 1601, subdivision (a) and implicates different policies. The restitution statute at issue in *Rubics*, Penal Code section 1202.4, subdivision (a)(1), was enacted pursuant to a constitutional provision (Cal. Const., art. I, § 28, subd. (b)). (*Ibid.*) It is well settled that restitution statutes enacted pursuant to this constitutional provision "should be interpreted broadly and liberally" (*People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084), and we have found no authority stating that Penal Code section 1601 must be interpreted in the same manner.

In addition, the court's analysis in *Rubics* was based not only on the defendant's flight from the scene in violation of Vehicle Code section 20001, subdivision (a), but also on the defendant's admission to an allegation under subdivision (b)(2) that the accident resulted in death. (*Rubics, supra*, 136 Cal.App.4th at p. 454.) In the matter before us, Penal Code section 1601, subdivision (a) can only apply if defendant was charged with a felony involving death. However, in contrast to *Rubics*, the district attorney here did not charge an allegation under subdivision (b)(2) that the accident resulted in the victim's death. Nor, of course, has the defendant otherwise admitted that the accident caused the victim's death. Thus, unlike the court in *Rubics*, we cannot conclude that the victim's death is an element of the charged violation of Vehicle Code section 20001.

Moreover, even though *Rubics* acknowledged the defendant's citation to the long line of cases stating that the gravamen of a Vehicle Code section 20001 violation is leaving the scene of an accident, the court did not discuss those cases in detail.[6] (*Rubics,*

---

[6] The court in *Rubics* relied almost exclusively on our Supreme Court's decision in *People v. Carbajal* (1995) 10 Cal.4th 1114, even though the court acknowledged that *Carbajal* was different because it involved restitution ordered as a condition of probation, not as a part of a state prison sentence. (See *Rubics, supra*, 136 Cal.App.4th at pp. 459-

10

*supra*, 136 Cal.App.4th at pp. 458-459.)  The court simply said that the defendant "reads section 20001, *for restitution purposes*, too narrowly." (*Id.* at p. 459, italics added.)  But for purposes of the matter now before us, we find that line of cases persuasively explains why Vehicle Code section 20001, subdivision (a) does not criminalize a car accident and its resulting injuries, but instead criminalizes leaving the scene of an accident. Accordingly, we disagree with *Rubics* to the extent it suggests that a charge of violating Vehicle Code section 20001, subdivision (a) is based on a defendant causing an accident that results in injury or death.  (Accord *Corenbaum, supra*, 215 Cal.App.4th at p. 1341 fn. 22 ["To the extent that [*Rubics*] suggested that a conviction under Vehicle Code section 20001, subdivision (a) is based in part on the defendant's causing or being involved in an injury accident, we decline to follow it . . . ."].)

The Attorney General argues that defendant committed a felony involving death because not only did the accident allegedly result in a death, but defendant "directly caused a death." (Italics omitted.)  There is no support for this latter point in the record or in the allegations of the criminal complaint relating to Vehicle Code section 20001. The record contains no evidence that defendant's flight caused the victim's death.  Nor has it been alleged in the charged Vehicle Code section 20001 violation that defendant caused a death.  The only allegations regarding the victim's death are contained in the count for vehicular manslaughter, which has been charged as a *misdemeanor*.  However, a misdemeanor involving death is not a statutory basis to require confinement pursuant to

---

461.)  *Carbajal* involved a defendant who pleaded no contest to a misdemeanor violation of Vehicle Code section 20002, which relates to leaving the scene of an accident resulting only in damage to property.  (*Id.* at p. 1119.)  The Supreme Court held that a trial court "may condition a grant of probation for a defendant convicted of fleeing the scene of an accident on payment of restitution to the owner of the property damaged in the accident." (*Id.* at pp. 1126-1127.)  However, the rationale for the court's holding was not that the property damage was caused by the hit-and-run violation.  Instead, the court held that a condition of probation must only be "reasonably related" to the crime of which defendant was convicted, and that "in the context of the hit-and-run statute, the restitution condition may relate to conduct that is not in itself necessarily criminal, i.e., the probationer's driving at the time of the accident." (*Id*. at p. 1123.)

Penal Code section 1601, subdivision (a). It would be particularly anomalous here to determine that Vehicle Code section 20001 was a felony involving death when the only alleged crime involving death is a misdemeanor.

The Attorney General argues that the legislative purpose of Vehicle Code section 20001 is "two-fold: (1) to prevent drivers from leaving the scene of accidents without providing proper identification, and (2) to ensure necessary assistance is given to injured people." But the cases cited by the Attorney General in support of this argument also make clear that Vehicle Code section 20001 was intended to criminalize a defendant's flight from an accident, not the accident itself. (See *Bailey v. Superior Court* (1970) 4 Cal.App.3d 513, 519 [" 'The legislative purpose in enacting 20001 was to prevent the driver of the offending car from leaving the scene of the accident without furnishing the information as to his identity and without rendering necessary aid to the injured person.' "]; *People v. Jiminez* (1992) 11 Cal.App.4th 1611, 1625, disapproved on another ground in *People v. Kobrin* (1995) 11 Cal.4th 416, 419-420 [gravamen of section 20001 offense is not the initial injury but leaving the scene]; *People v. Escobar* (1991) 235 Cal.App.3d 1504, 1509 ["The gravamen of a section 20001 offense, however, is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid."]; *People v. Corners* (1985) 176 Cal.App.3d 139, 148 ["Although a violation of section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' "]; *Karl v. C. A. Reed Lumber Co.* (1969) 275 Cal.App.2d 358, 361 ["The purpose of the statute is to prohibit drivers from leaving injured persons in distress and danger from lack of medical care, and from seeking to avoid civil or criminal liability resulting from the accident."]; *People v. Green* (1950) 96 Cal.App.2d 283, 288 ["The purpose of the 'hit and run' statute is to prevent the driver of an automobile from leaving the scene of an accident in which he participates or is involved without proper identification and to compel necessary assistance to those who have been injured."].)

The plain language of Penal Code section 1601 and Vehicle Code section 20001, along with the reasoning in *Braz*, *Wood*, *Valdez*, and *Corenbaum*, lead us to conclude that

12

defendant was not charged with a felony involving death under Penal Code section 1601. There are no allegations or evidence showing that the injuries sustained by the victim leading to his death were "caused by fleeing rather than . . . caused by the accident itself." (*Corenbaum, supra,* 215 Cal.App.4th at p. 1340.) Accordingly, the trial court erred by finding that the defendant was charged with a felony involving death under Penal Code section 1601. In light of this holding, we do not address defendants two alternative arguments: (1) that the trial court acted in excess of its jurisdiction because it ordered confinement without making any finding as to whether Penal Code section 1601, subdivision (a) was applicable, and (2) that the penal code provisions regarding competency are inadequate to address people diagnosed with dementia.

## DISPOSITION

The trial court's December 19, 2013, order confining defendant to Napa State Hospital is reversed. This matter is remanded for further proceedings consistent with this opinion.

_____

Miller, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

A141043, *People v. Cowart*

14

Trial Court:  Superior Court of Sonoma County

Trial Judge:  Hon. Gary A. Medvigy

Attorney for Defendant and Appellant      Dena Marie Young

By appointment of the Court of Appeal under the First District Appellate Project's Independent Case System

Attorneys for Plaintiff and Respondent

Kamala D. Harris
Attorney General
Dane R. Gillette
Chief Assistant Attorney General
Gerald A. Engler
Senior Assistant Attorney General
Seth K. Schalit
Supervising Deputy Attorney General
William M. Kumelis
Deputy Attorney General

A141043, *People v. Cowart*